UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEDROCK FINANCIAL, INC., a California Corporation,<br><br>              Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>              Defendant. | 1:10-cv-2326 OWW MJS<br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION TO STRIKE AND DEFENDANT'S MOTION TO STRIKE<br><br>(DOCS. 12, 14) |

## I.   INTRODUCTION

Plaintiff Bedrock Financial, Inc. ("Bedrock") proceeds with this action for equitable subrogation, declaratory relief, and judicial foreclosure of equitable lien against the United States of America ("United States"). Before the court are Bedrock's motion to strike answer and counterclaim (Doc. 12) and the United State's motion to strike (Doc. 13). The United States filed an opposition to Bedrock's motion (Doc. 13), to which Bedrock replied (Doc. 14). Bedrock did not file an opposition to the United States' motion to strike. The motions were heard June 13, 2011.

## II.   BACKGROUND

In August 2006, Jose M. Fuentes and his wife, Irma Fuentes (together, "Debtors"), borrowed $150,000.00 from R.K. Lowe, Trustee of the RK Lowe Revocable Trust ("Lowe Mortgage"), and secured repayment with a first deed of trust ("Lowe Deed of

1

Trust") against a vacant lot with commercial zoning in Atwater, Merced County, California ("Property"). The Lowe Deed of Trust was recorded on August 25, 2006 in Merced County.

On October 24, 2007, the Internal Revenue Service ("IRS") recorded a $42,458.12 tax lien against the Debtors in the Merced County records ("Tax Lien").

The Debtors became delinquent on their payments under the Lowe Deed of Trust in 2007. On February 5, 2008, the Debtors refinanced the Property with a $243,000.00 loan from Bedrock Financial ("Bedrock Refinancing"), securing repayment with a deed of trust encumbering the Property in favor of Bedrock Financial ("Bedrock Deed of Trust"). The Bedrock Financial Deed of Trust was recorded on February 5, 2008 in Merced County. The Debtors defaulted on the Bedrock Deed of Trust, and Bedrock foreclosed on the Property in October 2009.

Bedrock alleges that the Tax Lien was not discovered until long after the Debtors went into default under the Bedrock Deed of Trust. Bedrock alleges that based on the date of recordation of the Tax Lien, the Bedrock Refinancing unintentionally put the United States in a senior lien position on the Property. On May 3, 2010, Bedrock filed a state court action against the United States seeking equitable subrogation and foreclosure of Bedrock's equitable lien. The United States removed the action to federal

court and added First American ("FirstAm") as a third-party on a counterclaim of conversion of federal funds.

The California Secretary of State suspended Bedrock as a California corporation effective December 24, 2009. Due to Bedrock's lack of standing to pursue or defend a lawsuit, on October 12, 2010 the Complaint and the United States' counterclaim against Bedrock were voluntarily dismissed without prejudice; the third-party complaint against FirstAm remains pending.

After Bedrock's corporate status was reinstated, it re-filed a complaint for equitable subrogation and judicial foreclosure on December 14, 2010. (Doc. 1). On March 17, 2011, the United States filed an answer and counterclaim for declaratory relief and judicial foreclosure. (Doc. 10). Bedrock filed a motion to strike portions of the United States' answer and counterclaim (Doc. 12), and the United States filed a motion to strike Bedrock's jury demand (Doc. 13).

III. <u>LEGAL STANDARD</u>

Rule 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that might arise from litigating spurious issues by dispensing with those issues prior

to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023 (1994). Motions to strike are disfavored and infrequently granted. *E.g., Natural Res. Def. Counsel v. Kempthorne*, 539 F.Supp.2d 1155, 1162 (E.D. Cal. 2008). "A motion to strike under Rule 12(f) should be denied unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Gay-Straight Alliance Network v. Visalia Unified School Dist.*, 262 F.Supp.2d 1088, 1099 (E.D. Cal. 2001). "[E]ven when techinically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." 5C CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1381, (3d ed. 2011).

"Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). "A defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." 5C CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1381, (3d ed. 2011). A

4

1    partial defense is not insufficient. *Id.*

2         "'Immaterial' matter is that which has no essential or

3    important relationship to the claim for relief or the defenses

4    being pleaded." *Fantasy,* 984 F.2d at 1527. "'Impertinent' matter

5    consists of statements that do not pertain, and are not

6    necessary, to the issues in question." *Id.* Scandalous matters are

7    allegations "that unnecessarily reflect [] on the moral character

8    of an individual or state [] anything in repulsive language that

9    detracts from the dignity of the court." *Consumer Solutions REO,*

10   *LLC v. Hillery*, 658 F.Supp.2d 1002, 1020 (N.D. Cal. 2009)

11   (quoting *Cobell v. Norton*, 224 F.Rd.D. 1, 5 (D.D.C. 2004).

12

13                        IV.   DISCUSSION

14        A.   Bedrock's Motion to Strike

15             1.   Second Affirmative Defense

16        Bedrock moves to strike the United States' second

17   affirmative defense as an insufficient defense:

18        (2) Plaintiff has waived by its conduct any contention that
         the property's fair market value in February 2008 was less
19       than $243,000.

20   Doc. 10, 4. Bedrock contends that the United States' second

21   affirmative defense, based on the doctrine of waiver, is legally

22   insufficient to bar recovery under Bedrock's claims for equitable

23   subrogation and judicial foreclosure. Bedrock argues that its

24   Complaint seeks an equitable lien on the security itself-

25   regardless of its value in 2008 or any time, and the property's

                              5

1   fair market value in 2008 has no bearing on any claim.

2       The United States rejoins that the second affirmative

3   defense is not insufficient because equities are material to this

4   lawsuit, and that valuation, i.e., "windfall" "unjust

5   enrichment," or "prejudice," is material to the balancing of

6   equities.

7       Weighing of equities is part of the test for equitable

8   subrogation. *See Caito v. United Cal. Bank*, 20 Cal.3d 694, 704

9   (1978) ("Subrogation must not work any injustice to the rights of

10  others."). In addition, the doctrine of superior equities is

11  followed in subrogation litigation. *Rokeby-Johnson v. Aquatronics

12  Int'l, Inc.*, 159 Cal.App.3d 1076, 1084, 206 Cal.Rptr. 232 (1984).

13  Unjust enrichment is among the equities relevant to equitable

14  subrogation. *See In re Johnson*, 240 Cal.App.2d 742, 746 (1966).

15  Subrogation is applied liberally to prevent unjust enrichment.

16  *Haskel Eng'g & Supply Co. v. Hartford Accident & Indem. Co.*, 78

17  Cal.App.3d 371, 377, 144 Cal.Rptr. 189 (1978). The United States'

18  second affirmative defense is not insufficient as a matter of

19  law.

20      The United States further argues that the Property's 2008

21  valuation is a partial defense. The United States asserts that

22  the valuation was adequate in 2008 to fully pay the Tax Lien,

23  and, together with later interest accrual and other facts,

24  reduces Bedrock's equities to zero. Motions to strike are denied

6

1  if there is a mixed question of law and fact that cannot be

2  resolved. 5C CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD

3  L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1381 (3d ed. 2011).

4      Finally, the United States correctly asserts that Bedrock

5  has not shown any prejudice from the second affirmative defense.

6  "Motions to strike are rarely granted in the absence of a showing

7

8  of prejudice to the moving party." *Ollier v. Sweetwater Union*

9  *High School Dist.*, 735 F.Supp.2d 1222, 1224 (S.D. Cal. 2010).

10      Bedrock's motion to strike the United States' second

11  affirmative defense is DENIED.

12          2.   <u>Fifth and Seventh Affirmative Defenses</u>

13      Bedrock also moves to strike the United States' fifth and

14  seventh affirmative defenses as insufficient defenses:

15

16      (5) Plaintiff's acquisition of the fee interest in the
       property in October 2009 extinguished plaintiff's lien
17       interest.
       . . .
18     (7) Having foreclosed on its mortgage once in its October
       2009 nonjudicial foreclosure, plaintiff cannot now foreclose
19     on the same interest a second time.

20  Doc. 10, 4. Bedrock contends that the United States' fifth and

21  seventh affirmative defenses, based on the doctrine of merger,

22  are insufficient because the merger doctrine does not bar the

23  establishment or foreclosure of any equitable estate. Bedrock

24  argues that in order to assert such theories, the United States

25  must plead that Bedrock intended a merger. Bedrock contends that

26

27  because the allegation of intent does not appear in the United

28
                                    7

States' answer and it "cannot be made under the facts of the case at bar," the fifth and seventh affirmative defenses are legally insufficient.

The United States rejoins that a motion to strike cannot rely on extrinsic evidence, such as "the facts of the case at bar." *Fantasy*, 984 F.2d at 1528 ("a motion to strike must rely only on the fact of the pleading and on judicially noticed facts."). Whether Bedrock intended the merger is a question of fact. *Sheldon v. La Brea Materials Co.*, 216 Cal. 686, 692, 15 P.2d 1098 (1932) ("[I]ntention is a question of fact."). The United States further argues that the equities are important in merger questions, and that the application of the merger doctrine depends on further factual development. A motion to strike an affirmative defense can only be granted if there are no questions of fact. *Levin-Richmond Terminal Corp. v. Int'l Longshoremen's & Warehousemen's Union, Local 10*, 751 F.Supp. 1373, 1375 (N.D. Cal. 1990).

In its reply, Bedrock argues that the doctrine of merger has no application and is immaterial. Bedrock asserts that it seeks to impose and foreclose on an equitable lien, not on the original trust deed, and whether Bedrock's original trust deed merged into its subsequent fee interest is of no consequence. Bedrock, however, does not provide legal support for this argument. "[W]hen there is no showing of prejudicial harm to the moving

8

party, the courts generally are not willing to determine disputed

and substantial questions of law upon a motion to strike."

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306

F.2d 862, 868 (5th Cir. 1962). "[T]hese questions quite properly

are viewed as best determined only after further development by

way of discovery and a hearing on the merits, either on a summary

judgment motion or at trial." 5C Charles A. Wright, Arthur R. Miller,

Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 1381 (3d

ed. 2011).

   Bedrock's motion to strike the United States' fifth and

seventh affirmative defenses is DENIED.

   3.   **"Immaterial" and "Impertinent" References to Title Insurance in Counterclaim**

   Bedrock contends that the following references to title

insurance and purported indemnification of Bedrock in the United

States' counterclaims are immaterial and impertinent:

   19. One or more of Dual Arch International, Bedrock and the
   Tax Debtors selected FirstAm, and all engaged FirstAm, to be
   their escrow agent and to provide title insurance.

   20. At the direction of Dual Arch International, Bedrock and
   the Tax Debtors, with their approval and for their benefit,
   FirstAm set up and carried out an escrow for a loan by
   Bedrock and provided lender's title insurance to Bedrock.

   . . .

   33. Bedrock made a title insurance claim against FirstAm,
   complaining of the insured against federal tax lien. Upon
   receipt of the insurance claim, FirstAm did not pay the
   federal tax lien and did not pay Bedrock.

9

1
2
3

      34. FirstAm instead, under a term of the title insurance policy, defended Bedrock's interest in the Parcel by promoting a court action by Bedrock against the federal government.

4
5

      35. If the first-in-time federal tax lien is first in right, FirstAm will indemnify Bedrock under the terms of its title insurance policy for any loss suffered by Bedrock.

6
7

      37. Should the first-in-time federal tax lien not be first in right, FirstAm would escape paying on Bedrock's insurance claim.

8
9
10
11
12
13

Doc. 10, 7-9. Bedrock contends that the acts or omissions of First American Title Company and First American Title Insurance Company ("FirstAm") are irrelevant to this lawsuit and are likely to prejudice the fact-finder against Bedrock and jeopardize Bedrock's right to a fair trial.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

      The United States rejoins that: (1) FirstAm had knowledge of the Tax Lien, and the court, sitting in equity, should consider FirstAm's knowledge in weighing the equities; (2) FirstAm is the alleged tort feasor in the first lawsuit's claim for conversion of federal funds, and FirstAm's culpability in the related lawsuit should be considered in balancing the equities; and (3) as between Bedrock and FirstAm, FirstAm has the primary interest in the litigation, and, regardless of whether Bedrock prevails in this action, FirstAm will make Bedrock financially whole. Therefore, the United States argues that FirstAm's rights, obligations and behavior before, during, and after the litigation impact the equities as between the parties.

28

      Bedrock rejoins that: (1) whether FirstAm had knowledge of

the Tax Lien is irrelevant, and any knowledge that FirstAm had of

the Tax Lien during escrow cannot be imputed to Bedrock; (2)

FirstAm is not Bedrock's agent; and (3) evidence of Bedrock's

insurance coverage would not be admissible under Federal Rule of

Evidence 411.

The court has issued an order to show cause why the first

lawsuit, including the United States' third-party complaint for

conversion against FirstAm, should not be consolidated with this

lawsuit. Consolidation of the lawsuits would moot Bedrock's

claims of immateriality and impertinence.

Even if the two lawsuits are not consolidated, an inquiry

into the admissibility of evidence of Bedrock's insurance

coverage is premature at the pleading stage. In addition, the

disputed allegations provide a better understanding of the United

States' counterclaim. 5C CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY

KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed.

2011). ("The Rule 12(f) motion to strike allegedly offensive

matter also will be denied if the allegations might serve to

achieve a better understanding of the plaintiff's claim for

relief.").

Bedrock's motion to strike paragraphs 19-20 and 33-37 of the

United States' counterclaim is DENIED.

4.    "Scandalous" References to Title Insurance in
      Counterclaim

Bedrock also moves to strike the following paragraphs as

11

scandalous:

> 38. Should title insurers be allowed to escape payment of valid insurance claims by the device of actions against taxing authorities with recorded tax lien notices, title companies and escrow agents would have incentives to ignore and pass clouds on title to their customers.

> 39. Should title insurers be allowed to escape payment of valid insurance claims by actions against taxing authorities with recorded tax lien notices, the insurers would have incentives to insure clear title, at nominal risk to themselves, when the insured interests actually are clouded by valid tax liens.

Doc. 10, 9. Bedrock contends that no lender or title insurer would ever want to risk the expense, hassle, and difficulty of litigating lien priority disputes with the federal government. Rather, Bedrock argues that these allegations cast it in a "cruel and deragotory light" and do not state any facts whatsoever. Doc. 12-1, 10.

The United States correctly argues that these allegations fall far short of the Rule 12(f) standard for scandalous matters. The allegations do not reflect on the moral character of Bedrock or anyone else, state anything in repulsive language, or detract from the dignity of the court or parties.

Bedrock's motion to strike paragraphs 38 and 39 of the United States' counterclaim is DENIED.

### 5.   References to Title Insurance in Body of Answer

Based on its arguments supporting the motion to strike references to title insurance in the Counterclaim, Bedrock moves to strike references to title insurance in the body of the United

States' answer. For the same reasons, Bedrock's motion to strike references to title insurance in the United States' answer is DENIED.

   B.   United States' Motion to Strike

       The United States moves to strike the jury demand in the Complaint (1) due to lack of subject matter jurisdiction because of sovereign immunity, and (2) because the parties' claims sound in equity. Bedrock did not file an opposition to the motion to strike or address it in its reply. The United States' motion cannot be addressed until the parties' claims are developed in discovery. The motion to strike the jury demand can be renewed.

       The United States' motion to strike is DENIED, without prejudice.

                         V.   CONCLUSION

For the reasons stated:

   1. Bedrock's Motion to Strike is DENIED, without prejudice.

   2. The United States' Motion to Strike is DENIED, without
      prejudice.

   3. Bedrock shall submit a proposed form of order consistent
      with this memorandum decision within five (5) days of
      electronic service of this memorandum decision.

SO ORDERED.

DATED: June 17, 2011

                              /s/ Oliver W. Wanger
                            Oliver W. Wanger
                         United States District Judge

                              13